UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| JUSTIN EDMISTEN, | Case No. 3:22-CV-00439-ART-CLB |
| --- | --- |
| Plaintiff, | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1] |
| v. | [ECF No. 51] |
| PICKENS, *et al.*, | |
| Defendants. | |

This case involves a civil rights action filed by Plaintiff Justin Edmisten ("Edmisten") against Defendants Seth Davis ("Davis"), Macelen Kleer ("Kleer"), Madeline Pickens ("Pickens"), Curtis Rigney ("Officer Rigney"), Chet Rigney ("Lt. Rigney"), and William Reubart ("Reubart") (collectively referred to as "Defendants").

Currently pending before the Court is Defendants' motion for summary judgment. (ECF Nos. 51, 52, 56.)[2] Edmisten opposed the motion, (ECF No. 54), and Defendants replied. (ECF No. 55.) This is one of several excessive force cases from the Ely State Prison that appear to have recently arisen, which the Court finds exceedingly troubling. This case, like others that proceeded before the undersigned, also seems to involve several of the same correctional officers. Like other prior cases, Defendants seem to take the position that video footage of the incident is conclusive of whether the use of force was reasonable. However, the Court's review of the video footage contradicts Defendants' position. For this reason, and for the reasons discussed below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 51), be denied.

---

[1]  This Report and Recommendation is made to the Honorable Anne R. Traum, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]  ECF No. 51 is the motion for summary judgment. ECF No. 52 is CD containing video footage that was manually filed with the Clerk's Office. ECF No. 56 is an erratum to the motion for summary judgment, which contains authenticating declarations.

## I. BACKGROUND

### A. Procedural History

Edmisten is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). The events related to this case occurred while Edmisten was housed at the Ely State Prison ("ESP"). On October 5, 2022, Edmisten filed a civil rights complaint pursuant to 42 U.S.C. § 1983 based on an alleged excessive force incident at ESP. (ECF No. 1-1.)

In his verified complaint[3], Edmisten alleges the following: On June 29, 2022, during a cell extraction in response to an emergency that had since abated, members of the Correctional Emergency Response Team ("CERT") at ESP entered Edmisten's cell with a Plexi-glass shield, pushing him with it as they entered. (ECF No. 4 at 2.) Once in Edmisten's cell, the CERT officers placed Edmisten on the ground and handcuffed him, with his left hand behind his back and Officer Rigney holding Edmisten's right hand near his hip. (*Id.* at 2, 4.) During the imposition of handcuffs, Edmisten acted in a compliant manner. (*Id.*) Despite not resisting, Kleer beat Edmisten several times while Officer Rigney held him down. (*Id.* at 4.) Kleer struck Edmisten in the eyes, which resulted in a bloody eye socket, vision impairment, two black eyes, a drooping face, and ear damage. (*Id.*) Officer Rigney and Davis also partook in beating Edmisten. (*Id.* at 5.) In addition, Pickens placed leg restraints on Plaintiff, causing lacerations on his ankles. (*Id.*)

Edmisten alleges that during the whole altercation he did not resist the CERT officers. (*Id.* at 2, 4.) Lt. Rigney and Warden Reubart, supervisors present at Edmisten's cell extraction, did not stop the CERT officers who beat Edmisten and caused him the above-mentioned injuries. (*Id.* at 6.) Later, Lt. Rigney told Edmisten that the officers at the cell extraction enjoyed beating Edmisten, and asked Edmisten if he had learned anything in response to the beating. (*Id.*)

---

[3] "A verified complaint may be treated as an affidavit to oppose summary judgment to the extent it is 'based on personal knowledge' and 'sets forth specific facts admissible in evidence.'" *Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996) (quoting *McElyea v. Babbitt*, 833 F.2d 196, 197-98 & n.1 (9th Cir. 1987) (per curiam)) *amended by* 135 F.3d 1318 (9th Cir. 1998) (order).

On January 12, 2023, the District Court screened the complaint pursuant to 28 U.S.C. § 1915A and based on his allegations, permitted Edmisten to proceed on an excessive use of force claim under the Eighth Amendment against Defendants Officer Rigney, Davis, Kleer, and Pickens, and an excessive use of force claim based on supervisory liability against Defendants Lt. Rigney and Reubart. (ECF No. 3.)

Thereafter, the case proceeded. Following discovery, on February 14, 2024, Defendants filed the instant motion for summary judgment arguing this case should be dismissed because: (1) Edmisten failed to exhaust his administrative remedies; (2) Defendants used force in a good faith attempt to maintain control of Edmisten; and (3) Defendants are entitled to qualified immunity. (ECF No. 51.)

**B.    Factual Background re: Summary Judgment**

The following facts are undisputed, unless otherwise noted: On the morning of June 29, 2022, Edmisten propelled urine on staff during pill call. (ECF No. 51-1 at 2-8; ECF No. 52 (video of incident).) Shortly after this occurred, a planned use of hands-on force was authorized to extract Edmisten from his cell. (*Id.*) The use of force team members were: (1) CERT Officer Kleer in charge of shield; (2) CERT Officer Rigney in charge of upper left extremities; (3) CERT Officer Pickens in charge of upper right extremities; (4) CERT Senior Officer Davis in charge of lower extremities, (5) Senior Correctional Officer Noriega in charge of lower extremities and restraints; (6) Sergeant Lester as camera operator; and (7) Lieutenant Rigney as incident commander. (ECF No. 51-1 at 3.) Also present was Warden Reubart and Associate Warden Cooke. (*Id.*) Edmisten received several orders to exit his cell, which he refused. (ECF No. 51-1 at 2-8, ECF No. 52.) It is important to note that although Edmiston was given warnings that if he did not comply, officers would enter his cell to remove him, he was not specifically advised that hands-on force would be used. (*Id.*)

According to an investigation detail report from the use of the force incident, several members of CERT entered Edmisten's cell at approximately 8:00 a.m. (ECF No. 51-1 at 2.) The CERT Officers reported that Edmisten was combative and actively fighting

3

with the CERT Officers when they entered his cell.[4] (*Id.* at 3-8.) The officers were able to move Edmisten to the bottom bunk in his cell and then place him on the ground where he was placed in restraints. (*Id.*) CERT Rigney reported applying two closed fist strikes to the right side of Edmisten's upper abdomen and Noriega also reported using two closed fist strikes to the back of Edmisten's legs. (*Id.*) Once restrained, Edmisten was removed from his cell and placed in the shower where an unclothed body search was performed. (*Id.* at 3.)

Following the incident, Edmisten was assessed by medical staff. (*Id.* at 5.) Edmisten complained of pain in his face, but no other pain was noted. (*Id.*) Medical noted several things, including minimal dried blood to Edmisten's "bilateral eyebrows and right nostril," "two lacerations (approx. 0.5 cm) noted to left eyebrow, and one laceration (approx. 0.5 cm) noted to right eyebrow. Moder (sic) swelling and purple/red discoloration noted to left eyebrow and lower eye area," "mild swelling and purple/red discoloration noted to right under eye". (*Id.*) Edmisten was provided medication for pain and swelling and a cool compress for inflammation. (*Id.*) Edmisten was cooperative with medical staff during the interaction. (*Id.*) Following the medical examination, Edmisten was placed back in his cell without further incident. (*Id.* at 2-8.) None of the officers reported any injuries following the use of force incident. (*See* ECF No. 51-1; ECF No. 52.)

On August 4, 2022, Edmisten submitted an informal grievance, Grievance 2006-31-41516, regarding the incident. (ECF No. 51-3.) In that Grievance, Edmisten stated during a cell extraction on June 29, 2022, Officer Kleer struck Edmisten several times in the face while he was handcuffed with his left hand behind his back. (*Id.* at 2, 5.) Edmisten also stated that the use of force was "definitely not proper procedure" and that "a few things were done poorly." (*Id.*)

The informal grievance response stated: "Inmate Edmiston #1047583 Your grievance is partially granted as it has been reffered (sic) to the IG's office for further

---

[4] This fact is disputed based on the allegations in Edmisten's verified complaint. (ECF No. 4 at 4.)

4

investigation". (*Id.* at 4.) The transaction date for the informal grievance is August 11, 2022. (*Id.*) Edmisten signed the informal grievance, indicating that he "agreed" with the outcome on August 26, 2022. (*Id.* at 2.)

The response from the Inspector General ("IG"), in relevant part, was as follows:

> The videos that were taken of the incident do not indicate or provide any evidence that excessive force was used against you. The videos do show you being uncompliant throughout the entire incident. Medical did see you and the injuries listed by you at the time are inconsistent with your allegations in the grievance. ESP staff used the least amount of force necessary to contain and control you. Grievance Denied.

(*Id.* at 3.) There is no indication that Edmisten received the response.

## II.   LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements,

speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden

is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

### III.  DISCUSSION

#### A.  Failure to Exhaust Administrative Remedies

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative

remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The requirement's underlying premise is to "reduce the quantity and improve the quality of prisoner suits" by affording prison officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id*. at 524–25.

The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing Woodford, 548 U.S. at 90). Thus, exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90–91.

In the Ninth Circuit, a motion for summary judgment will typically be the appropriate vehicle to determine whether an inmate has properly exhausted his or her administrative remedies. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166. The question of exhaustion "should be decided, if feasible, before reaching the merits of a prisoner's claim." *Id*. at 1170.

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The defendant bears the burden of proving that an available administrative remedy was unexhausted by the inmate. *Albino*, 747 F.3d at 1172. If the defendant makes such a showing, the burden shifts to the inmate to "show there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective,

unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

### 1. Analysis

Defendants argue Edmisten failed to fully exhaust the grievance process by timely filing a first-level grievance, effectively abandoning the grievance process. (ECF No. 51 at 7-10.)

It is undisputed that with respect to Grievance 2006-31-41516, Edmisten only completed an informal level grievance. (ECF No. 51-3.) In the Grievance, Edmisten stated that during a cell extraction on June 29, 2022, Officer Kleer struck Edmisten several times in the face while he was handcuffed with his left hand behind his back. (*Id.* at 2, 5.) Edmisten also stated that the use of force was "definitely not proper procedure" and that "a few things were done poorly." (*Id.*) Edmisten submitted his informal grievance on August 4, 2022. (*Id.* at 7.)

The informal grievance was assigned to Casework Specialist James Underwood ("Underwood"), who responded: "Inmate Edmiston #1047583 Your grievance is partially granted as it has been reffered (sic) to the IG's office for further investigation". (*Id.* at 4; ECF No. 51-5 at 2; ECF No. 51-7.) The transaction date for the informal grievance response is August 11, 2022. (ECF No. 51-3 at 4.) Edmisten signed the informal grievance, indicating that he "agreed" with the outcome on August 26, 2022. (*Id.* at 2.)

The response from the IG is dated November 8, 2022, and states in relevant part:

> The videos that were taken of the incident do not indicate or provide any evidence that excessive force was used against you. The videos do show you being uncompliant throughout the entire incident. Medical did see you and the injuries listed by you at the time are inconsistent with your allegations in the grievance. ESP staff used the least amount of force necessary to contain and control you. Grievance Denied.

(*Id.* at 3.)[5] There is no indication that Edmisten received the response.

---

[5] The Court is troubled by the IG's response. First, this response refers to videos – in the plural. In fact, the Investigation Detail Report notes both a "handheld" and "overhead" video. (*See* ECF No. 51-1 at 7.) However, the Court was only provided a single video of the incident, which appears to be the handheld video. Second, to the extent

Underwood, who responded to Edmisten's informal level grievance, filed a declaration in support of the motion for summary judgment stating:

> Upon receiving the IG's response, the inmate would then have the opportunity to progress the grievance to the next level. In Edmisten's case, he chose not to pursue the grievance process after the informal level by filing a first-level grievance. As he did not file the first-level grievance, he abandoned the administrative remedy before it was fully exhausted.

(ECF No. 51-7 at 4.)

There are several issues with Defendants' argument regarding exhaustion. First, once Edmisten received a partial grant of his informal level grievance and he indicated that he "agreed" with the outcome, he was not obligated to continue the grievance process. *Harvey v. Jordan*, 605 F.3d 681, 684 (9th Cir. 2010) (an inmate is not obligated to continue the grievance process after he receives satisfactory relief).

In *Harvey*, the inmate was given a notice of disciplinary charge in connection with a cell extraction, and the prison's rules required that he be given a hearing within thirty days of receipt of the notice. *Id.* at 684. Five months passed without a hearing, and Harvey filed a grievance and asked that he be given a hearing with a video of the cell extraction (which he claimed would prove his innocence), or that the disciplinary charge be dropped. *Id.* at 684–85. The grievance request was partially granted, as Harvey was advised he would be given a hearing and access to the tape (the disciplinary charge was not dropped). *Id.* at 685. He was told he could file an appeal within 15 days if he was not satisfied with that resolution. *Id.* Harvey did not file an appeal. *Id.* Another five months passed, and he did not get a hearing or access to the tape, so Harvey used an appeal form to advise the prison. *Id.* The prison treated it as an appeal and rejected it as untimely because it was outside the fifteen-day time frame. *Id.*

The Ninth Circuit held: "An inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies. Nor

---

this response relates to the IG's overall finding that "[t]he videos do show [Edmisten] being uncompliant throughout the entire incident", as the Court discusses below, it is not apparent or conclusive from the video that Edmisten was noncompliant.

is it the prisoner's responsibility to ensure that prison officials actually provide the relief that they have promised." *Id.* (citing *Abney v. McGinnis*, 380 F.3d 663, 669 (2d Cir. 2004) ("A prisoner who has not received promised relief is not required to file a new grievance where doing so may result in a nerve-ended cycle of exhaustion.")). "Once the prison officials purported to grant relief with which he was satisfied, the exhaustion obligation ended. His complaint had been resolved, or so he was led to believe, and he was not required to appeal the favorable decision." *Id.*

Here, the record indicates Edmisten's grievance was partially granted, in that it was referred to the IG for further investigation. (ECF No. 51-3.) Edmisten signed the informal level grievance on August 26, 2022, indicating that he "agreed" with the outcome. (*Id.* at 2.) Under *Harvey*, the obligation to exhaust is not excused when a prison official indicates that a grievance is resolved; rather, it is excused when the prisoner receives a satisfactory response. *Leonard v. McDaniel*, 3:15-cv-00031-RCJ-WGC, 2016 WL 8453642 at *5 (D. Nev. Oct. 31, 2016) (emphasis added). Therefore, because Edmisten was satisfied with the response of the informal grievance, he was not required to pursue the first and second level grievances with respect to his excessive force claim.

However, even assuming Edmisten was required to proceed to the first level after the IG response stated: "Grievance denied", there is no evidence whatsoever that Edmisten ever received the response from the IG's office. (*See* ECF Nos. 51-3; 51-5 at 2.) Further, to the extent Defendants are arguing that Edmisten had to wait for the IG's response before filing his lawsuit, the Ninth Circuit has held that "[w]hen prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies" because "prison officials have thwart[ed] inmates from taking advantage of [the] grievance process, making that process unavailable." *Andres v. Marshall*, 867 F.3d 1076, 1078 (9th Cir. 2017) (internal quotation marks and citations omitted).

Other judges in this district have explicitly found that where an inmate is told at the informal level that his claim is being referred to the IG, but then the IG's investigation goes

on indefinitely or is never initiated and the inmate does not receive a response, administrative remedies are effectively unavailable.[6] *See Jensen v. Dzurenda*, No. 3:19-cv-00178-MMD-CSD, 2022 WL 16702164, at *5 (D. Nev. Aug. 29, 2022); *Horvath v. Williams*, No. 3:16-cv-000553-MMD-WGC, 2018 WL 6594608, at *3-4 (D. Nev. Nov. 26, 2018); *Lafferty v. Williams*, No. 3:16-cv-00279-RCJ-WGC, 2017 WL 9217698, at * 7-8 (D. Nev. Dec. 6, 2017). While it appears the IG did conduct an investigation, there is no evidence that Edmisten ever received the IG's response, and therefore his administrative remedies were effectively unavailable.

Based on all the above, Defendants have not met their burden of demonstrating that Edmisten did not exhaust his administrative remedies. Therefore, Defendants' motion should be denied with respect to exhaustion.

### B. Excessive Force

The Eighth Amendment's proscription on cruel and unusual punishment forbids prison officials from inflicting "the unnecessary and wanton infliction of pain . . .." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Encompassed within the Eighth Amendment is a bar on the use of excessive force against prisoners. *See Hudson v. McMillian*, 503 U.S. 1, 7-10 (1992). Courts in the Ninth Circuit apply a five-part balancing test to excessive force claims: (1) the extent of the inmate's injuries; (2) the need for application of force; (3) the relationship between the need and amount of force; (4) the threat reasonably perceived by prison officials; and (5) any efforts that officials utilized to "'temper the severity of a forceful response.'" *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

The inmate must demonstrate that officials acted maliciously and sadistically to prevail. "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7. As the Ninth Circuit has explained,

---

[6] It is worth noting that the undersigned cannot recall a case where an inmate was provided the results of an IG investigation.

> [t]he "malicious and sadistic" standard arose out of "the need to maintain or restore discipline" inside the prison. When a prison disturbance occurs, prison officials must make "decisions 'in haste, under pressure, and frequently without the luxury of a second chance.'" In these situations, prison officials are "accorded wide-ranging deference" and therefore, prisoners alleging excessive force must show that the force was applied "maliciously and sadistically to cause harm."

*Wood v. Beauclair*, 692 F.3d 1041, 1049-50 (9th Cir. 2012) (quoting *Hudson,* 503 U.S. at 6 and *Whitley,* 475 U.S. at 320). Thus, the Court must be careful when reviewing the factors to verify indicia of "such wantonness with respect to the unjustified infliction of harm as [is] tantamount to a knowing willingness that it occur." *Hudson*, 503 U.S. at 9. Moreover, there is no need for a showing of serious injury as a result of the force, but the lack of such injury is relevant to the inquiry. *See id.* at 7-9; *Martinez*, 323 F.3d at 1184; *Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000).

Excessive force cases "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom," and for this reason, the Ninth Circuit has "held on many occasions that summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *see also Lolli v. Cnty. of Orange*, 351 F.3d 410, 415–16 (9th Cir. 2003); *Liston v. Cnty. of Riverside*, 120 F.3d 965, 976 n. 10 (9th Cir. 1997) (citing cases).

In the motion for summary judgment, Defendants contend that summary judgment is appropriate based on the video of the incident showing the use of force was reasonable and necessary under the circumstances and applied in a good-faith effort to maintain or restore discipline. (ECF No. 51 at 6-7, 12-14.) Further, in addressing the *Martinez* factors, Defendants assert the force used must be related to the resistance from the inmate and review of the video and the officers' reports indicate that this was the case here. (*Id.* at 13.)

The Court has reviewed the video provided by Defendants of the incident, (ECF No. 52), and finds the representations made by Defendants to be incredibly troubling as it relates to the conclusive nature of the footage. Contrary to Defendants' assertions, it is

not clear from the video that Edmisten was actively combative and/or resisting officers. In fact, Edmisten cannot even be seen clearly on the video until after he has been restrained and is being removed from his cell. At that point, Edmisten's face is bloody, and his eyes appear swollen. Further, much of the incident is blocked by Lt. Rigney, who is standing at the back of the cell. It is also particularly difficult to see Edmisten because of the five officers in full tactical riot gear fully surrounding Edmisten.

What can be discerned from the video is the following: As soon as Edmisten's cell door opens, the five officers rush into the cell. (ECF No. 52 at time stamp 10:38-10:42.) Lt. Rigney immediately says "Stop resisting. The inmate is fighting. The inmate is currently fighting. Stop resisting! The inmate is striking the officers." (*Id.* at time stamp 10:43-10:49.)[7] The officers were able to move Edmisten down to the ground, at which point various officers are telling Edmisten to "give up your hands". (*Id.* at time stamp 11:07-11:18.) Edmisten can then be heard saying, "Quit hitting me! Hey, stop hitting me!" and "Here, here, here, here, here!"—presumably in response to being told to give up his hands. (*Id.* at time stamp 11:09-11:18.) Edmisten can also be heard saying "Stop! Stop! Stop! Please sir, stop! (*Id.* at time stamp 11:23-11:30.) During this time, it appears the CERT Officer on the right-hand side of Edmisten is throwing multiple punches while attempting to restrain him. (*Id.* at time stamp 11:14-11:30.) Once fully restrained, Edmisten is removed from the cell where he is seen bloodied and bruised. (*Id.* at time stamp 12:27-12:31.)

The Defendants' own report of this incident does not match the video. According to the incident report, CERT Rigney reported applying two closed fist strikes to the right side of Edmisten's upper abdomen and Noriega also reported using two closed fist strikes

---

[7] The Court must note that the manner and tone of Lt. Rigney's statements in the video do not appear to be extemporaneous explanations of the events transpiring. Rather, it appears to the Court that these statements are made relatively calmly and in a manner that appears to be rehearsed—particularly given the express efforts by Lt. Rigney to look back at the camera as these statements are being made. It will be for a jury to decide if Lt. Rigney's comments are truly a reflection of what was transpiring in the cell during Edmiston's extraction or whether these statements were intended to give support to a use of force that was otherwise unnecessary.

14

to the back of Edmisten's legs. (ECF No. 51-1 at 3-8.) However, the video shows more than four punches being thrown. Further, the Defendants' version of events does not account for the injuries Edmisten visibly sustained to his face. Most importantly, what is not clear on the video—aside from Lt. Rigney's statements—is that Edmisten is actively combative and resisting the officers. What the Court does see on the video is a group of five officers in full tactical riot gear rushing into an inmate's cell where a struggle ensues and eventually a fully restrained, bloodied, and bruised inmate emerges.

Based on the evidence before the Court, and in viewing all facts and drawing all inferences in the light most favorable to Edmisten, the Court finds that Defendants fail to meet their initial burden in moving for summary judgment to demonstrate that a reasonable juror could not find for Edmisten. *Celotex*, 477 U.S. at 323. Defendants are thus unable to overcome the initial step in the summary judgment burden-shifting framework. *See In re Oracle Corp.*, 627 F.3d at 387.

However, even if the Court were to assume Defendants met their initial burden on summary judgment, Defendants' motion must still be denied. Viewing the evidence in the light most favorable to Edmisten, the Court cannot say as a matter of law that the force used was not excessive. Based on Edmisten's allegations, Defendants used unreasonable force to restrain and remove him from his cell despite the fact he was not actively resisting. Based on the allegations, if Edmisten was not actively resisting, the officers would not have been permitted to use physical force and the force they did apply would not have been used to maintain or restore discipline. The Court is troubled by the very notion that the threat of Edmisten—an individual in his cell who was not known to have any weapons, was acting in a fairly calm manner before the incident, and is never actually seen resisting or being combative—could pose a risk of harm or danger to <u>five</u> officers in full tactical riot gear that would warrant the use of force that was exhibited. A reasonable jury could determine that the amount of force used against Edmisten was excessive.

///

It is not the Court's role to weigh conflicting evidence or make credibility determinations, but only to determine whether there is a genuine issue of material fact for trial. *Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997). Further, the Ninth Circuit has found that the reasonableness of force used is ordinarily a question of fact for the jury because such cases almost always turn on a jury's credibility determinations. *See Liston,* 120 F.3d at 976 n. 10.

The Court finds that through his verified complaint, Edmisten has set forth evidence sufficient to raise a genuine issue of material fact for trial as to whether Defendants' use of force was "maliciously and sadistically" applied rather than as part of a "good faith effort to maintain or restore discipline." *Hudson,* 503 U.S. at 7. Accordingly, the Court recommends that Defendants' motion for summary judgment, (ECF No. 51), be denied as to Edmisten's Eighth Amendment excessive force claim.

### C. Qualified Immunity

The Eleventh Amendment bars damages claims and other actions for retroactive relief against state officials sued in their official capacities. *Brown v. Oregon Dept. of Corrections*, 751 F.3d 983, 988–89 (9th Cir. 2014) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). State officials who are sued individually may also be protected from civil liability for money damages by the qualified immunity doctrine. More than a simple defense to liability, the doctrine is "an entitlement not to stand trial or face other burdens of litigation . . ." such as discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When conducting a qualified immunity analysis, the Court asks "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)). A right is clearly established if it would be clear to a reasonable official in the defendant's position that his conduct in the given situation was constitutionally infirm. *Anderson v. Creighton,* 483 U.S. 635, 639–40, (1987); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012). The Court may

analyze the elements of the test in whatever order is appropriate under the circumstances of the case. *Pearson*, 555 U.S. at 240–42.

A right is clearly established when the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (quoting *Anderson*, 483 U.S. at 640). "While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular [action] beyond debate," *City of Escondido v. Emmons*, 139 S. Ct. 500, 504 (2019) (alteration in original) (quoting *District of Columbia v. Wesby*, 538 U.S. 48, 64 (2018) (internal quotation marks omitted)), and must " 'squarely govern[ ]' the specific facts at issue," *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 15 (2015)). See *Jessop v. City of Fresno*, 936 F.3d 937, 940–41 (9th Cir. 2019) ("The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.") (quoting *Anderson*, 483 U.S. at 640).

The plaintiff "bears the burden of showing that the rights allegedly violated were clearly established." *Shafer v. County of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (internal quotation marks and citation omitted). However, because resolving whether the asserted federal right was clearly established presents a pure question of law, we draw on our "full knowledge" of relevant precedent rather than restricting our review to cases identified by the plaintiff. *See Elder v. Holloway*, 510 U.S. 510, 516 (1994) (holding appellate court must review qualified immunity judgment de novo and resolve whether federal right was clearly established in light of its "full knowledge of its own [and other relevant] precedents") (alteration in original) (citation omitted). Ultimately, "the prior precedent must be 'controlling'—from the Ninth Circuit or Supreme Court—or otherwise be embraced by a 'consensus' of courts outside the relevant jurisdiction." *Sharp v. County of Orange*, 871 F.3d 901, 911 (9th Cir. 2017) (citing *Wilson v. Lane*, 526 U.S. 603, 617 (1999)); *see also Wesby*, 138 S. Ct. at 589–90 ("The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive

authority. It is not enough that the rule is suggested by then-existing precedent.") (internal quotation marks and citations omitted); *Carroll v. Carman*, 574 U.S. 13, 17 (2014) (per curiam) (assuming without deciding that controlling circuit precedent could constitute clearly established federal law).

Defendants contend they are entitled to qualified immunity because there was no constitutional violation, and the law was not clearly established at the time of the alleged violation. (ECF No. 51 at 12-16.) Defendants assert "[t]here is nothing in this case that would have put Defendants on clear notice that they should have responded to Edmisten's actions in any other manner than how the Defendants chose to respond." (*Id.* at 14.) However, these arguments assume that Defendants' version of events occurred. Because genuine issues of material fact exist as to whether Defendants violated Edmisten's constitutional rights, qualified immunity is not appropriate at this juncture.

Based on Edmisten's version of events, it was clearly established at the time of the incident that a prison official violates the constitution when force is used maliciously or sadistically to cause harm and not in a good-faith effort to maintain or restore discipline. *See Hudson,* 503 U.S. at 6-7. Taking the facts in the light most favorable to Edmisten, a fact finder could determine that Defendants violated Edmisten's clearly established rights. For these reasons, Defendants are not entitled to qualified immunity.

### D.   Appointment of Counsel

There is no constitutional right to appointed counsel in a § 1983 action. *E.g., Rand v. Rowland*, 113 F.3d 1520, 1525 (9th Cir. 1997), *opinion reinstated in pertinent part*, 154 F.3d 952, 954 n.1 (9th Cir. 1998) (en banc). The provision in 28 U.S.C. §1915(e)(1) gives the court discretion to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *see, e.g., Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1998) (en banc.) While the decision to request counsel lies within the discretion of the district court, the court may exercise this discretion to request counsel only under "exceptional circumstances." *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991).

///

A finding of "exceptional circumstances" requires the court to evaluate (1) the plaintiff's likelihood of success on the merits and (2) the Plaintiff's ability to articulate his claims pro se considering the complexity of the legal issues involved. *Id.* (quoting *Wilborn*, 789 F.2d at 1331) (internal quotation marks omitted). Neither factor is dispositive, and both factors must be considered before a court decides. *Id.* The difficulties every litigant faces when proceeding pro se does not qualify as an exceptional circumstance. *Wood v. Housewright*, 900 F. 2d 1332, 1335-36 (9th Cir. 1990). While almost any pro se litigant would benefit from the assistance of competent counsel, such a benefit does not rise to the level of "exceptional circumstances." *Rand*, 113 F.3d at 1525. Rather, the plaintiff must demonstrate that he is unable to articulate his claims due to their complexity. *Id.*

Given the posture of this case at this juncture, the Court finds that exceptional circumstances warrant appointment of counsel. *Terrell*, 935 F.2d at 1017. Specifically, as the Court finds that summary judgment is not appropriate, Edmisten has a likelihood of success on the merits at trial. Further, as this case will now proceed to trial, the Court finds that in light of Edmisten's repeated difficulties throughout this case to clearly articulate his claim, it is likely he will have a diminished ability to articulate his claims at trial *pro se* considering the complexity of the legal issues involved—such as the potential need for expert witnesses. Accordingly, the Court finds that exceptional circumstances exist here. Thus, the Court recommends that Edmisten be granted counsel and that his case be referred to the Pro Bono Program adopted in the Amended General Order 2019-07 for the purpose of identifying counsel willing to be appointed as pro bono counsel for Edmisten.

**IV.     CONCLUSION**

For good cause appearing and for the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 51), be denied.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and

Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 51), be **DENIED**.

**IT IS FURTHER RECOMMENDED** that Edmisten be granted counsel and that this case be referred to the Pro Bono Program for appointment of counsel.

**DATED**: March 25, 2024   .

_____
**UNITED STATES MAGISTRATE JUDGE**