UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JUSTIN EDMISTEN,<br><br>  Plaintiff,<br>v.<br>PICKENS, *et al.*,<br><br>  Defendants. | Case No. 3:22-cv-00439-ART-CLB<br><br>*ORDER ADOPTING REPORT AND RECOMMENDATION (ECF NO. 57)* |

*Pro se* Plaintiff Justin Edmisten brings this action under 42 U.S.C. § 1983 against Ely State Prison employees Seth Davis ("Davis"), Macelen Kleer ("Kleer"), Madeline Pickens ("Pickens"), Curtis Rigney ("Officer Rigney"), Chet Rigney ("Lt. Rigney"), and William Reubart ("Reubart") (collectively referred to as "Defendants") for Defendants' use of excessive force in violation of the Eighth Amendment.

Before the Court is Defendants' motion for summary judgment. (ECF Nos. 51, 52, 56.) United States Magistrate Judge Carla Baldwin has issued a Report and Recommendation ("R&R") recommending denial of Defendants' motion. (ECF No. 57.) Plaintiff and Defendants have filed objections to that R&R. (ECF Nos. 58, 59.) For the reasons identified below, the Court overrules Defendants' and Plaintiff's objections, adopts the R&R, and denies Defendants' motion for summary judgment.

**I.  FACTS**

This order concerns Edmisten's claims that Defendants used excessive force during a cell extraction. (ECF No. 4.) The Court adopts the facts as recited in Judge Baldwin's R&R and includes them here for completeness. (ECF No. 57 at 3–5.)

On the morning of June 29, 2022, Edmisten propelled urine on staff during

1

pill call. (ECF No. 51-1 at 2-8; ECF No. 52.) Shortly after this occurred, a planned use of hands-on force was authorized to extract Edmisten from his cell. (*Id.*) The use of force team members were: (1) CERT Officer Kleer in charge of shield; (2) CERT Officer Rigney in charge of upper left extremities; (3) CERT Officer Pickens in charge of upper right extremities; (4) CERT Senior Officer Davis in charge of lower extremities, (5) Senior Correctional Officer Noriega in charge of lower extremities and restraints; (6) Sergeant Lester as camera operator; and (7) Lieutenant Rigney as incident commander. (ECF No. 51-1 at 3.) Warden Reubart and Associate Warden Cooke were also present. (*Id.*) Edmisten received several orders to exit his cell, which he refused. (ECF No. 51-1 at 2-8, ECF No. 52*.)* Edmiston was warned that if he did not comply, officers would enter his cell to remove him, but he was not warned that hands-on force would be used. (*Id.*)

According to an investigation detail report, several CERT officers entered Edmisten's cell at approximately 8:00 a.m. (ECF No. 51-1 at 2.) The officers reported that Edmisten was combative and actively fighting when they entered his cell. (*Id.* at 3-8.) Officers moved Edmisten to the bottom bunk in his cell and placed him on the ground where he was placed in restraints. (*Id.*) Officer Rigney reported applying two closed fist strikes to the right side of Edmisten's upper abdomen and Noriega reported using two closed fist strikes to the back of Edmisten's legs. (*Id.*) Once restrained, Edmisten was removed from his cell and placed in the shower where officers performed an unclothed body search. (*Id.* at 3.)

In his complaint, Edmisten alleges that during the cell extraction, CERT officers entered Edmisten's cell with a Plexi-glass shield, pushing him with it as they entered. (ECF No. 4 at 2.) Once in Edmisten's cell, the officers placed Edmisten on the ground and handcuffed him, with his left hand behind his back and Officer Rigney holding Edmisten's right hand near his hip. (*Id.* at 2, 4.) Edmisten was compliant while he was handcuffed. (*Id.*) Despite his compliance,

1   Kleer beat Edmisten several times while Officer Rigney held him down. (*Id.* at 4.)
2   Kleer struck Edmisten in the eyes, which resulted in a bloody eye socket, vision
3   impairment, two black eyes, a drooping face, and ear damage. (*Id.*) Officer Rigney
4   and Davis also beat Edmisten. (*Id.* at 5.) Pickens placed leg restraints on Plaintiff,
5   causing lacerations on his ankles. (*Id.*) Edmisten claims that during the whole
6   altercation he did not resist the officers. (*Id.* at 2, 4.) Lt. Rigney and Reubart,
7   supervisors present at Edmisten's cell extraction, did not stop the officers who
8   beat Edmisten. (*Id.* at 6.) Later, Lt. Rigney told Edmisten that the officers had
9   enjoyed beating Edmisten and asked Edmisten if he had learned anything in
10  response to the beating. (*Id.*)

11       Following the incident, Edmisten was assessed by medical staff. (ECF No.
12  51-1 at 5.) Edmisten complained of pain in his face. (*Id.*) Medical staff reported
13  dried blood to Edmisten's eyebrows and nostril, two 0.5 cm lacerations on his
14  eyebrows, moderate swelling and discoloration at his left eyebrow and under his
15  left eye, minimal bleeding, and mild swelling and discoloration under his right
16  eye. (*Id.*) Edmisten was cooperative with medical staff during the interaction. (*Id.*)
17  Following the examination, Edmisten was returned to his cell without further
18  incident. (*Id.* at 2-8.) No officers reported injuries following the incident. (*See* ECF
19  No. 51-1; ECF No. 52.)

20       On August 4, 2022, Edmisten submitted an informal grievance, Grievance
21  2006-31-41516. (ECF No. 51-3.) In that Grievance, Edmisten stated that during
22  the cell extraction, Kleer struck Edmisten several times in the face while he was
23  handcuffed with his left hand behind his back. (*Id.* at 2, 5.) Edmisten stated that
24  the use of force was "definitely not proper procedure" and that "a few things were
25  done poorly." (*Id.*) The informal grievance response stated: "Inmate Edmiston
26  #1047583 Your grievance is partially granted as it has been referred (sic) to the
27  IG's office for further investigation." (*Id.* at 4.) The transaction date for the
28  informal grievance is August 11. (*Id.*) On August 26, Edmisten signed the informal

3

grievance, indicating that he "agreed" with the outcome. (*Id.* at 2.)

On November 8, the IG's official response was issued. (*Id.* at 3.) The response stated:

> The videos that were taken of the incident do not indicate or provide any evidence that excessive force was used against you. The videos do show you being uncompliant throughout the entire incident. Medical did see you and the injuries listed by you at the time are inconsistent with your allegations in the grievance. ESP staff used the least amount of force necessary to contain and control you. Grievance Denied. (*Id.*)

There is no indication that Edmisten received this response.

## II.     PROCEDURAL HISTORY

As stated in the R&R, Edmisten filed a civil rights complaint on October 5, 2022, alleging that Defendants used excessive force during the incident described above. (ECF No. 1-1.) In February of 2024, Defendants filed a motion for summary judgment arguing that this case should be dismissed because: (1) Defendants used force in good faith to maintain control of Edmisten; (2) Edmisten failed to exhaust his administrative remedies; and (3) Defendants are entitled to qualified immunity. (ECF No. 51.) Judge Baldwin then issued an R&R recommending denial of Defendants' motion. (ECF No. 57.)

Edmisten timely filed an objection, requesting that the Court grant summary judgment. (ECF No. 58.) Although the document is titled "Objection," it appears to request summary judgment. (*Id.*) Because the deadline to file dispositive motions has passed in this case, the Court construes Edmisten's motion as a motion for leave to file a motion for summary judgment and denies that request. (ECF No. 28.)

Defendants also timely filed an objection, arguing that: (1) Edmisten failed to exhaust administrative remedies; and (2) Defendants are entitled to qualified immunity. (ECF No. 59.)

4

## III. LEGAL STANDARD

### A. REVIEW OF REPORT AND RECOMMENDATIONS

Under the Federal Magistrates Act, a Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by [a] magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's report and recommendation, then the court is required to "make a *de novo* determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. § 636(b)(1). A court is not required to conduct "any review at all . . . of any issue that is not the subject of an objection." *Thomas v. Arn*, 474 U.S. 140, 149 (1985).

### B. SUMMARY JUDGMENT

A party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* at 248. Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). However, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex*, 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.' . . . In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). When the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex*, 477 U.S. at 323-25.

If the moving party satisfies its initial burden, the burden shifts to the nonmoving party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, they must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### C. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Under the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be

brought with respect to prison conditions under … [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). This means that "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford*, 548 U.S. at 88. The only limit to § 1997e(a)'s mandate is the one in its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross v. Blake*, 578 U.S. 632, 648 (2016).

The PLRA does not require exhaustion when circumstances render administrative remedies "effectively unavailable." See *Eaton v. Blewett*, 50 F.4th 1240, 1245 (9th Cir. 2022); *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (as amended) ("[F]ailure to exhaust a remedy that is effectively unavailable does not bar a claim from being heard in federal court.")

"[W]here inmates take reasonably appropriate steps to exhaust but are precluded from doing so by a prison's erroneous failure to process the grievance, [the court has] deemed the exhaustion requirement satisfied." *Fordley v. Lizarraga*, 18 F.4th 344, 352 (9th Cir. 2021); *see Eaton*, 50 F.4th at 1246 ("Delays in processing and failures to respond to pending grievances are circumstances signaling the practical unavailability of administrative remedies."); *Andres v. Marshall*, 867 F. 3d 1076, 1078 (9th Cir. 2017) (explaining that when "prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies").

An inmate has "no obligation to appeal from a grant of relief, or a partial grant that satisfies [them], in order to exhaust [their] administrative remedies." *Harvey v. Jordan*, 605 F.3d 681, 685 (9th Cir. 2010); *see also Hernandez v. Cloutier*, 801 F. App'x 561, 562-63 (9th Cir. 2020)*; Kimbro v. Miranda*, 735 F.

App'x 275, 278 (9th Cir. 2018); *Griffin v. Bal*, 609 F. App'x 493, 494 (9th Cir. 2015). Likewise, it is not the inmate's responsibility "to ensure that prison officials actually provide the relief they have promised." *Harvey*, 605 F.3d at 685.

The failure to exhaust administrative remedies is "an affirmative defense the defendant must plead and prove." *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007). The defendant bears the burden of proving that an available administrative remedy was not exhausted. *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). If the defendant makes that showing, the burden shifts to the inmate to "show there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

A motion for summary judgment is typically the appropriate vehicle to determine whether an inmate has properly exhausted their administrative remedies. *Albino*, 747 F.3d at 1169. "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56." *Id.* at 1166. But "[i]f material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.*

**D. QUALIFIED IMMUNITY**

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "In § 1983 actions, qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sampson*

*v. County of Los Angeles*, 974 F.3d 1012, 1018 (9th Cir. 2020) (citations and internal quotation marks omitted).

The Supreme Court has set forth a two-part analysis for resolving government officials' qualified immunity claims. See *Saucier v. Katz*, 533 U.S. 194, 201 (2001), overruled in part on other grounds by *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Under this analysis, "[q]ualified immunity protects government officials from liability under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *Cuevas v. City of Tulare*, 107 F.4th 894, 898 (9th Cir. 2024) (citation and internal quotation marks omitted). First, the court considers whether the facts "[t]aken in the light most favorable to the party asserting the injury … show [that] the [defendant's] conduct violated a constitutional right[.]" *Saucier*, 533 U.S. at 201. Second, the court must determine whether the right was clearly established at the time of the alleged violation. *Id.* Courts exercise "discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822 (2015) (per curiam). "[A] court must define the right at issue with 'specificity' and 'not … at a high level of generality.'" *Gordon v. County of Orange*, 6 F.4th 961, 968 (9th Cir. 2021) (quoting *City of Escondido v. Emmons*, 586 U.S. 38, 42 (2019) (per curiam)). "A constitutional right is clearly established if every reasonable official would have understood that what he is doing violates that right at the time of his conduct." *Sampson v. County of Los Angeles by & through L.A. Cnty. Dep't of Child. & Fam. Servs.*, 974 F.3d 1012, 1018–19 (9th Cir. 2020) (citation and internal quotation marks omitted).

To conclude that the right is clearly established, the court need not identify an identical prior action. *See Anderson*, 483 U.S. at 640. However, "existing precedent must have placed the statutory or constitutional question beyond debate." *Foster v. City of Indio*, 908 F.3d 1204, 1210 (9th Cir. 2018) (per curiam) (quoting *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) (per curiam)).

Although both the "clearly established right" and "reasonableness" inquiries are questions of law, where there are factual disputes as to the parties' conduct or motives, the case cannot be resolved at summary judgment on qualified immunity grounds. *See Rosenbaum v. City of San Jose*, 107 F.4th 919, 924 (9th Cir. 2024) ("Where factual disputes exist as to the objective reasonableness of an officer's conduct, the case cannot be resolved at summary judgment on qualified immunity grounds." (citation omitted)); *Torres v. City of Madera*, 648 F.3d 1119, 1123 (9th Cir. 2011) ("Where the objective reasonableness of an officer's conduct turns on disputed issues of material fact, it is a question of fact best resolved by a jury . . . ; only in the absence of material disputes is it a pure question of law." (citations and internal quotation marks omitted)).

**IV.    DISCUSSION**

Defendants raise two objections to Judge Baldwin's R&R, arguing that (1) Edmisten failed to exhaust his administrative remedies, and (2) Defendants are entitled to qualified immunity. (ECF No. 59.) The Court addresses and overrules each of these objections below. Because the Court agrees with Judge Baldwin's analysis, the Court adopts without review the portions of the R&R that Defendants did not object to: the recommendation that the motion for summary judgment be denied as to Edmisten's excessive force claim and the recommendation that Edmisten be granted counsel.

**A. OBJECTION 1: EXHAUSTION OF ADMINISTRATIVE REMEDIES**

In their motion for summary judgment, Defendants argue that Edmisten

1    failed to exhaust the grievance process because he completed only an informal
2    grievance and did not file a first-level grievance. (ECF No. 51 at 7-10.)

3    As stated in Judge Baldwin's R&R, it is undisputed that Edmisten only
4    completed an informal level grievance. (ECF No. 51-3.) The informal grievance,
5    dated August 4, 2022, was assigned to Caseworker Specialist James Underwood
6    ("Underwood"). (*Id.* at 7.) On August 11, Underwood responded: "Your grievance
7    is partially granted as it has been referred (sic) to the IG's office for further
8    investigation." (*Id.* at 4.) On August 26, Edmisten signed the informal grievance
9    response and indicated that he "agreed" with it. (*Id.* at 2.) On November 8, the IG
10   denied Edmisten's grievance. (*Id.* at 2.) There is no evidence indicating that
11   Edmisten received this response. Judge Baldwin's R&R identifies two issues with
12   Defendants' argument. First, because Edmisten indicated that he "agreed" with
13   the outcome of the informal grievance, he was not obligated to continue the
14   grievance process. Second, even if Edmisten was obligated to continue the
15   grievance process, the grievance process may have been effectively unavailable to
16   Edmisten because there is no evidence that Edmisten ever received the response
17   from the IG's office. (ECF No. 57 at 9-12.)

18   In their objection, Defendants reassert their failure to exhaust argument,
19   contending that (1) Edmisten was required to appeal the "partial grant" of his
20   grievance, and (2) although there does not appear to be a record of the grievance
21   being returned to Edmisten, Underwood's standard practice is to meet with the
22   inmate to review the grievance and response, therefore Edmisten was required to
23   appeal the IG's response. (ECF No. 59 at 5-7.)

24   Essentially, the two issues are (1) whether Edmisten was required to appeal
25   Underwood's grievance response (the "partial grant") and (2) whether Edmisten
26   was required to appeal the IG's grievance response (the denial). The Court finds
27   that Edmisten was not required to appeal the "partial grant" because he indicated
28   that he was satisfied with the response, and Edmisten was not required to appeal

the denial because there is no evidence that he received it.

### 1. First Grievance Response ("Partial Grant")

Defendants argue that, under AR 740, Edmisten was required to appeal the first grievance response (the "partial grant") to the next level. (ECF No. 59 at 6.) AR 740.03(7)(D) states: "If the grievance is PARTIALLY GRANTED, DENIED, or RESOLVED at any level, the offender must appeal the response to the next grievance level in order for the grievance process to be considered complete and for the offender's administrative remedies considered to be exhausted." (ECF No. 51-4 at 5.) Accepting that this was a "partial grant," Edmisten was not required to appeal.[1]

Edmisten was not required to appeal because he was satisfied with the response. In their objection to this point, Defendants state that Edmisten's "signature agreeing with the partial grant on the informal grievance does not absolve him of the requirement to appeal the decision to the next level." (ECF No. 59 at 6.) However, they do not cite to any caselaw to support this contention or explain why the R&R's analysis of *Harvey v. Jordan* is inapplicable. (ECF No. 59 at 10-11.)

In *Harvey*, an inmate who was facing a disciplinary charge requested a hearing and a videotape. *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010). Prison officials granted the relief requested, informing Harvey that a hearing would be held and that he would be permitted to view the videotape, and labeled the decision a partial grant because Harvey had requested in the alternative that the charges be dismissed. *Id.* The decision also informed Harvey that he could file an appeal if he was not satisfied with its resolution. *Id.* at 685. Harvey did not

---

[1] While the response to Edmisten's grievance was labelled a "partial grant," it was in substance a referral to the Office of the Inspector General. Under the Administrative Regulations, partial grants and referrals are distinct categories of response: under AR 740.01(5), grievances may be "GRANTED, DENIED, PARTIALLY GRANTED, [ . . .]; or referred to the Office of the Inspector General (IG) at any level." (ECF 51-4 at 2.) A reasonable reading of the regulations would not require an inmate to appeal a grievance response such as this one, which does not deny any part of the inmate's grievance and simply refers the complaint to another office.

12

appeal. *Id.* When Harvey complained five months later that he had not received the requested relief, Defendants argued that Harvey should have appealed the partial grant. *Id.* The Ninth Circuit explained that "[a]n inmate has no obligation to appeal from a grant of relief, or a *partial grant that satisfies him*, in order to exhaust his administrative remedies. Nor is it the prisoner's responsibility to ensure that prison officials actually provide the relief they have promised." *Id.* (emphasis added). In that case, "[o]nce the prison officials purported to grant relief with which he was satisfied, his exhaustion obligation ended. His complaint had been resolved, or so he was led to believe, and he was not required to appeal the favorable decision." *Id.*

Following *Harvey v. Jordan*, judges in this district have held that plaintiffs who receive "partial grants" at the informal grievance level such as this one are not required to appeal in order to exhaust administrative remedies. *See Leonard v. McDaniel*, No. 315CV00031RCJWGC, 2016 WL 8453642, at *5 (D. Nev. Oct. 31, 2016), *report and recommendation adopted*, No. 315CV00031RCJWGC, 2017 WL 888316 (D. Nev. Mar. 6, 2017), *aff'd*, 723 F. App'x 492 (9th Cir. 2018) (plaintiff not required to pursue first and second level grievances after he signed the informal level grievance indicating that he agreed with the outcome); *Meeks v. Nevada Dep't of Corr.*, No. 318CV00431MMDWGC, 2020 WL 8084979, at *6 (D. Nev. Nov. 10, 2020), *report and recommendation adopted sub nom. Meeks v. Bacca*, No. 318CV00431MMDWGC, 2021 WL 53619 (D. Nev. Jan. 6, 2021) ("Since Plaintiff's grievance was partially granted at the informal level, Plaintiff exhausted available administrative remedies under this grievance.")

Here, Edmisten's signature and agreement with the grievance response indicate that he was satisfied with the outcome. As such, Edmisten was not required to appeal the initial grievance response and his obligation to exhaust administrative remedies ended.

### 2. Second Grievance Response (Denial)

Because there is no evidence that Edmisten received the second grievance response, the Court agrees with the R&R's finding that administrative remedies were effectively unavailable and therefore Edmisten is deemed to have exhausted available remedies.

In their objection, Defendants concede that "there does not appear to be a record of the grievance being returned to Edmisten" and state that it is "unclear why [the IG's] response was not entered into NOTIS." (ECF No. 59 at 7.) Defendants point to Underwood's declaration that his "standard practice is to meet with the inmate in order to review the grievance and response." (*Id.*) In his declaration, Underwood describes his "general practice," but does not assert that he followed this "general practice" in this case or describe any communication between Underwood and Edmisten. (ECF No. 51-7.)

As the R&R points out, judges in this district have found administrative remedies unavailable in scenarios like this, where NDOC informs the inmate that their claim is being referred to the Inspector General, but the inmate does not receive a response. *See Jensen v. Dzurenda*, No. 319CV00178MMDCSD, 2022 WL 16702164, at *5 (D. Nev. Aug. 29, 2022), *report and recommendation adopted sub nom. Jensen v. Mason*, No. 319CV00178MMDCSD, 2022 WL 4985686 (D. Nev. Oct. 4, 2022) (administrative remedies unavailable where plaintiff did not receive a response from the Inspector General's Office until after he filed the lawsuit); *Horvath v. Williams*, No. 316CV00553MMDWGC, 2018 WL 6594608, at *3-5 (D. Nev. Nov. 26, 2018), *report and recommendation adopted*, No. 316CV00553MMDWGC, 2018 WL 6591796 (D. Nev. Dec. 14, 2018) ("seemingly indefinite referral to the Inspector General's Office with no response" rendered plaintiff's administrative remedies unavailable).

Defendants have failed to show either that Edmisten received the second grievance response or that he met with Underwood about it. Because Defendants

1 have failed to meet their burden of demonstrating that Edmisten failed to exhaust
2 his administrative remedies, Defendants' first objection is overruled and
3 Defendants' motion for summary judgment is denied with respect to exhaustion.

### B. OBJECTION 2: QUALIFIED IMMUNITY

In their motion for summary judgment, Defendants assert that they are entitled to qualified immunity because there was no constitutional violation and because no clearly established constitutional right exists. (ECF No. 51 at 12-16.)

In the R&R, Judge Baldwin explains that these arguments assume that Defendants' version of events occurred, and that summary judgment is inappropriate at this juncture because genuine issues of material fact exist. (ECF No. 57 at 18.)

In their objection, Defendants reassert their argument that there is no caselaw that would give Defendants clear notice that their alleged actions violated Edmisten's constitutional rights. (ECF No. 59 at 8-9.) Defendants argue that Edmisten's act of propelling urine on staff, viewed alongside his "history of violence," made the officers' actions reasonable. (*Id.* at 9.) Defendants do not object to the R&R's excessive force analysis, and the Court adopts the R&R's finding that there is sufficient evidence to raise a genuine issue of material fact as to whether Defendants' use of force violated the Eighth Amendment. (ECF No. 57 at 12-16.)

The same factual disputes which raise a genuine dispute of material fact as to whether there was an Eighth Amendment violation mean that the case cannot be resolved at summary judgment on qualified immunity grounds. Edmisten alleges that Kleer beat him and struck his eyes; that Pickens placed leg restraints on him that caused ankle lacerations; that Davis beat him; that Officer Rigney held him down while Kleer beat him; and that Officer Rigney beat him—all while Edmisten did not resist or present a danger to any of the officers. (ECF No. 3 at 5.) Edmisten also alleges that Lt. Rigney and Reubart failed to take

reasonable steps to prevent the beating, and that Lt. Rigney told Edmisten that the participants enjoyed beating him. (ECF No. 3 at 6.) In contrast, Defendants allege that Edmisten threw closed fist strikes at the officers; that Edmisten pulled his arms under him to prevent officers from restraining his wrists; that Edmisten kicked his legs at the officers; that Officer Rigney applied two closed fist strikes to Edmisten's abdomen to remove Edmisten's arms from under his body; and that Noriega applied two closed fist strikes to the Edmisten's legs in order to place leg restraints on him. (ECF No. 51 at 2-3.)

Defendants assert that the video of the incident shows that the use of force was reasonable and necessary and applied in a good-faith effort to maintain or restore discipline. (ECF No. 51 at 6-7, 21-14). However, having reviewed the video evidence provided by Defendants, the Court agrees with Judge Baldwin's concern that Defendants' representations as to the conclusive nature of the footage are "incredibly troubling." (ECF No. 57 at 13.)  As the R&R notes, Edmisten cannot be seen clearly on the video until after he has been restrained and is being removed from the cell—at which point his face is bloody and his eyes appear swollen. (ECF No. 52 at time stamp 12:27-12:31.) Much of the incident is blocked not only by the five officers in full tactical riot gear surrounding Edmisten, but also by Lt. Rigney who is standing almost directly in front of the camera view. (ECF No. 52 at time stamp 10:38-12:27.) Because this footage fails to resolve the discrepancies between Defendants' and Edmisten's version of events, summary judgment on this point is inappropriate.

Because a genuine issue of material fact exists that precludes judgment on qualified immunity, Defendants' second objection is overruled.

//

//

//

//

## V. CONCLUSION

It is therefore ordered that Defendants' objection to Judge Baldwin's Report and Recommendation (ECF No. 59) is overruled. It is further ordered that Plaintiff's objection (ECF No. 58), which the Court construes as a motion for leave to file a motion for a motion for summary judgment, is denied.

It is further ordered that Defendants' motion for summary judgment (ECF No. 51) is denied.

It is further ordered that Plaintiff be granted counsel and this case be referred to the Pro Bono Program for appointment of counsel.

Dated this 17th day of September 2024.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE